FITZHUGH *v*. LEONARD.

Opinion delivered November 28, 1927.

1. BROKERS—RIGHT TO SHARE OF PROFITS—EVIDENCE.—Under an agreement with a broker whereby a tract of land was priced at $17,000, and the broker was to receive one-third of the profits exceeding that amount, it was error to exclude evidence that the stock of goods received by the principals in exchange would probably not sell for enough to make any profit over $17,000.

2. BROKERS—RIGHT TO SHARE OF PROFITS.—In a broker's action for commissions on exchange of real property for a stock of goods and other property, under an agreement whereby the broker was to receive one-third of the profits to be made in excess of $17,000, the

broker was not entitled to recover, if at the time of trial it was impossible to determine from the evidence what profit the principals had made on exchange of the property.

3. BROKERS—RIGHT TO COMMISSION—BURDEN OF PROOF.—Where a broker claimed that he was entitled to receive as commission for exchange of property one-third of the profits realized over $17,000, the burden was upon him to prove that profits exceeding that amount were actually realized from a sale of the stock of goods and other property received in exchange for the land.

4. BROKERS—RIGHT TO COMMISSION—JURY QUESTION.—In a broker's action to recover one-third of the profits over $17,000 realized by the principals on exchange of land for his stock of goods and other property, the questions whether the contract alleged was entered into, and whether profits above $17,000 were realized, *held* for the jury.

Appeal from Izard Circuit Court; *John C. Ashley,* Judge; reversed.

*Hill & Fitzhugh* and *S. M. Casey,* for appellant.

*H. A. Northcutt* and *J. Paul Ward,* for appellee.

HUMPHREYS, J.　This is an appeal from a judgment of $3,000 rendered in the circuit court of Izard County in favor of appellee against appellants for a commission on exchanging 600 acres of land owned by appellants near Jacksonport, Jackson County, valued at $30,000, for a 200-acre tract valued at $10,000, a stock of goods valued at $15,267.73, and cash and notes amounting to $4,732.27 owned by Garner Brothers. Appellee alleged that he was to receive as a commission one-third of any excess above $17,000, the cash price agreed upon between appellants and appellee for their 600-acre tract, which appellants might realize upon the property received by them in exchange for said 600-acre tract, and that, as they gained a net profit of $9,000 over and above $17,000 out of the property received by them, it would entitle him to $3,000 as his part of the profit.

Appellants filed an answer, denying that such a contract was made and that any profits had accrued to them out of the property they received above the cash value of their 600-acre tract, which was fixed at $17,000.

Appellee testified, in substance, that, while selling out a stock of goods in Calico Rock, for which he had

traded, he was informed by Garner Brothers that they would like to trade their stock of goods for land; that he mentioned it to W. B. Headstream, who informed him that appellants had land for sale or exchange; that he and Headstream approached J. B. Fitzhugh concerning the trade, and was told by him that he and A. K. Goodnight had 600 acres in the White River bottom for which they wanted $17,000 in cash, and that, in case of exchange, they would have to receive that much net; that they entered into a contract with J. B. Fitzhugh by which he priced the 600-acre tract to them at $17,000, in case they should effect an exchange with Garner Brothers, and to split the profits above $17,000 three ways, one-third to each, and that they should have until the spring of 1926 to work out the profits on the Garner stock of goods; that the money to be split three ways was net profit that should be made out of the deal above $17,000 which appellants were to first receive for the 600-acre tract of land; that he spent about ten days endeavoring to make the exchange, and, just before it was completed, and while hanging fire on the price of the Delco plant, he was called to Texas on business; that he had priced the 600-acre tract to Garner Brothers for $30,000, which they were willing to give, provided appellants would allow them $10,000 for 200 acres of land they owned in Oil Trough bottom, ninety cents on the dollar on the wholesale price of their stock, $700 for cash register, $700 for safe, $400, less ten per cent., for a Delco lighting system, and fixtures at ten per cent. less than catalogue prices; that J. B. Fitzhugh was objecting to the price of the Delco plant, which was seemingly the only hitch in the deal, when he left for Texas; that Fitzhugh sent him word that he did not want him in the store, and proposed to pay him wages for his services, which he refused to accept; that Fitzhugh made objection to paying $10,000 for the 200-acre tract in Oil Trough bottom, but, before he left, he agreed to allow that in the trade, with the understanding that, between themselves, in settlement of the commission that should be valued at $6,000; that, on Tuesday after he left

for Texas, appellants closed the deal with Garner Brothers on practically the same basis that they had figured on; that he was entitled to $3,000 as his part of the profits for his services, in which he estimated the prices fixed on the several properties involved in the trade.

The written contract between appellants and Garner Brothers was introduced in evidence, and is as follows:

"This agreement, by and between J. B. Fitzhugh and A. K. Goodnight, party of the first part, and J. T. and A. B. Garner, party of the second part, witnesseth: That said Fitzhugh and Goodnight agree to make and deliver to the said J. T. and A. B. Garner their warranty deed, with abstract showing good and merchantable title to all the land owned by them in what is known as and called Mason Bend, near Jacksonport, in Jackson County, Arkansas, and containing 600 acres, more or less, and also all the land owned by the said Fitzhugh and Goodnight in the town of Jacksonport. The agreed price for all of said land is $30,000. The said J. T. and A. B. Garner agree to give and deliver to the said Fitzhugh and Goodnight a warranty deed to what is known as and called the Lewis Marlow farm, in Oil Trough bottom, Independence County, Arkansas, containing 200 acres, more or less, and now owned by the said J. T. and A. B. Garner, and being all the land owned by them in Oil Trough bottom, the agreed price for said land is $10,000, and they also agree to transfer to the said Fitzhugh and Goodnight their stock of merchandise in their store building at Calico Rock, Izard County, for 90 cents on the dollar of actual wholesale cost; a safe to be valued at $700; a cash register to be valued at $700 net; a Delco lighting system valued at $400, less 10 per cent. All usable fixtures to be valued at 10 per cent. less than catalogue prices. And the said J. T. and A. B. Garner are to pay the difference between their land and merchandise and fixtures and the land conveyed to them by the said Fitzhugh and Goodnight, in cash, or a note satisfactory to the said Fitzhugh and Goodnight. The merchandise and fixtures are to be

invoiced at once, and the deeds and transfers to be perfected and exchanged within fifteen days, unless delayed
by some unavoidable occurrence.

"Signed in four copies, this 23rd day of June, 1926.

(Signed) "Fitzhugh & Goodnight,

"By J. B. Fitzhugh.

"J. T. & A. B. Garner,

"By J. T. Garner."

Appellants introduced testimony tending to show
that the contract entered into between them and Garner
Brothers was materially different from the one which
appellee attempted to negotiate before he left for Texas,
and that, after he failed to consummate the deal and
had abandoned further effort to effect same, he agreed
to drop out and accept wages for his services.

In the course of trial appellants offered to prove
that the stock of goods received from Garner Brothers
was being disposed of at retail, and that the indication
was that they would not sell for enough to make any
profit above $17,000, and that there was no way to ascertain the profits above $17,000 until the stock was disposed of. The court excluded this evidence, over the
objection and exception of appellants, and refused to
give the following instruction requested by appellants,
to-wit:

"If you find from the evidence that it is impossible
to determine at this time what, if any, profit the defendants made on the sale of the farm, your verdict should
be for the defendants."

To which refusal of the court to give said instruction appellants duly excepted.

We think this evidence admissible, and the instruction should have been given. The gist of the complaint
was that appellee was to receive as his commission for
making the deal one-third of any profits to be derived
out of the property received from Garner Brothers
above $17,000, which amount appellants were first to
receive for their 600-acre tract of land. Appellee testified
that he was to receive his pay out of the profits to be

derived from the sale of the stock of goods, and that he and Headstream were to have until the spring of 1927 to work the profits out of the stock of goods. According to the allegation of his complaint and his own testimony, the burden was upon him to show a profit was made above $17,000 out of the property received from Garner Brothers.

The cause should have been sent to the jury upon the grounds as to whether such a contract as alleged was made, and, if so, whether any profits above $17,000 had been derived by appellants out of the property received from Garner Brothers in exchange for the 600-acre tract.

On account of the error indicated the cause is remanded for a new trial.